UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KARI MCDANIEL,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF GARDEN CITY, IDAHO, a municipal corporation; CITY OF BOISE, IDAHO, a municipal corporation; IDAHO DEPARTMENT OF HEALTH AND WELFARE; BRIANNE VARELLA (true name unknown), CPS Worker; MADDIE HAGGERTY, CPS Worker; KELLY SCHOPLOCK, CPS Worker; JESSICA PARTRIDGE, CPS Worker, APRIL CALVERT, CPS Worker, POLICE OFFICERS AND SUPERVISORS DOES 1-20; CPS WORKERS DOES 21-50; CPS SUPERVISORS DOES 51-70; CPS DIRECTOR DOES 71-80,<br><br>Defendants. | Case No. 1:26-cv-00222-DCN<br><br>**INITIAL REVIEW ORDER** |

## I. INTRODUCTION

Before the Court is Plaintiff Kari McDaniel's Complaint (Dkt. 2) and Application for Leave to Proceed in Forma Pauperis (Dkt. 1). Under 28 U.S.C. § 1915, the Court must review McDaniel's request to determine whether she is entitled to proceed in forma pauperis—which permits civil litigants to proceed without prepayment of the filing fee or to pay the filing fee over time. *Rice v. City of Boise City*, 2013 WL 6385657, at *1 (D. Idaho Dec. 6, 2013). The Court must also undertake an initial review of McDaniel's

Complaint to ensure it meets the minimum required standards. *See* 28 U.S.C. § 1915(e)(2).

For the reasons explained below, the Court DENIES McDaniel's application to proceed in forma pauperis but will allow her to pay the filing fee over time. Further, the Court finds some of McDaniel's Complaint legally sufficient to survive initial review. The Court will allow Counts I, II, and IV to proceed, and DISMISSES WITHOUT PREJUDICE the remaining Counts. The Court will allow McDaniel an opportunity to remedy the shortcomings in her Complaint as to these claims by filing an Amended Complaint if she so chooses.

## II. APPLICATION TO PROCEED IN FORMA PAUPERIS

"[A]ny court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, . . . without prepayment of fees or security therefor." 28 U.S.C. § 1915(a)(1). To qualify for in forma pauperis status, a plaintiff must submit an affidavit that includes a statement of all assets he possesses and indicates that he is unable to pay the fee required. The affidavit is sufficient if it states that the plaintiff, because of his poverty, cannot "pay or give security for the costs" and still be able to provide for himself and dependents "with necessities of life." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948). The affidavit must "state the facts as to affiant's poverty with some particularity, definiteness and certainty." *United States v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981) (citation modified) (quoting *Jefferson v. United States*, 277 F.2d 723, 725 (9th Cir. 1960)).

The Court has examined McDaniel's application to proceed in forma pauperis and finds it does not conclusively establish her indigence. McDaniel indicates that her average

monthly income during the past 12 months is $1,305.00 dollars, with the same amount expected in the next month. McDaniel then lists her monthly expenses including rent, food, and transportation at a total of $1,100.00. This leaves McDaniel with around $205.00 per month in discretionary income. McDaniel has a spouse, whose income and expenses are not listed, and cares for a 4-month-old granddaughter. Thus, the Court determines that McDaniel is not indigent and cannot proceed without pre-payment of the filing fee. However, the Court will allow McDaniel to pay this fee over time to reduce any financial burden. McDaniel must pay the fee in $100.00 monthly installments.

## III. SUFFICIENCY OF COMPLAINT

The Court is required to screen Complaints that are brought by litigants who seek in forma pauperis status. *See* 28 U.S.C. § 1915(e)(2); *see also Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) ("[S]ection 1915(e) applies to all in forma pauperis Complaints, not just those filed by prisoners"). The Court must dismiss a plaintiff's Complaint, or any portion thereof, if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i-iii). To state a claim upon which relief can be granted, a plaintiff's Complaint must include facts sufficient to show a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)). The plaintiff cannot simply recite the elements of a cause of action and try to support that recitation with mere conclusory statements. *Id.* at 678.

During this initial review, courts generally construe pro se pleadings liberally, giving pro se plaintiffs the benefit of any doubt. *See Resnick v. Hayes*, 213 F.3d 443,447

(9th Cir. 2000). Even so, plaintiffs—whether represented or not—have the burden of articulating their claims clearly and alleging facts sufficient to support review of each claim. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). Additionally, if amending the Complaint would remedy the deficiencies, plaintiffs should be notified and provided an opportunity to amend. *See Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

In the case McDaniel presents here, there are three children mentioned. McDaniel and her husband had guardianship over one child for approximately ten years before the events described in the Complaint and gained permanent guardianship over a second child earlier in the year of the events described in the Complaint. Dkt. 2 at 8. The third child, the proximate subject of most claims in Plaintiff's Complaint, was approved for guardianship in what is described in the Complaint as a kinship foster placement. *Id.* In order to maintain stability and sibling unity, McDaniel claims Child Protective Services ("CPS") decided to pursue guardianship rather than adoption to place the child in the same guardianship case as the child's sibling (it is unclear by the Complaint who the child's sibling was, but it appears as if the child's sibling is the second child that Plaintiff gained permanent guardianship over earlier that year). *Id.* at 9.

The next part of the facts alleged in the Complaint are less than clear, but to the best of the Court's reading, the facts appear to be as follows. McDaniel alleges that a guardian ad litem was working on a pro bono basis attempting to unify the guardianship cases, but they were prevented from doing so by CPS. *Id.* CPS then sent documentation required to be filled out by McDaniel and her husband. *Id.* at 10. They did so, but were then denied the ability to take custody of the child even though approved. *Id.* After 30 days McDaniel

regained custody of the child for approximately 1 year. *Id.* It is unclear from the Complaint when this chain of events occurred.

On April 11, 2024, McDaniel, while responsible for the three court-appointed children, was arrested for a misdemeanor DUI, but she was acquitted of the charges approximately nine months later. *Id.* at 12. On August 12, 2024, McDaniel missed a scheduled hearing concerning her guardianship due to being in custody after the arrest. *Id.* at 13. McDaniel alleges that during the hearing, no safety concerns were raised, and at the conclusion McDaniel's husband was contacted and instructed to prepare the child to be removed by CPS. *Id.* at 14. McDaniel further alleges that CPS then removed the child without a warrant, leaving the other two court-appointed children in their care. *Id.* at 15.

After the child was removed from the home, McDaniel and her husband were asked to submit a hair analysis and participate in interviews with CPS, to which she alleges they wholly and sufficiently complied. Dkt. 2 at 16. The interview was conducted on April 14, 2024, where McDaniel, her husband, and the two children remaining in their custody were present. *Id.* On April 15, 2024, McDaniel attended a CPS visit for the birthday of the child, and on April 20, 2024, she attended a CPS visit with the child at a park. *Id.* at 17. McDaniel claims that this was the last contact with the child, and two weeks later CPS informed them the child would not be returned to their custody. *Id.* at 17-18.

**1. Unlawful Seizure of a Child**

McDaniel alleges that Defendants, acting under color of state law, conducted a warrantless seizure of her child without exigent circumstances, probable cause, or lawful jurisdiction. Dkt 2, at 60. She claims Defendants lacked reasonable cause to believe the

child was in imminent danger of serious bodily injury or that immediate removal was necessary, and no emergency circumstances existed that would justify the judicial process or obtaining a warrant. *Id.* McDaniel further claims that this conduct violated her rights under the Fourth Amendment as established by *Wallis v. Spencer*, 202 F.3d 1126 (9th Cir. 1999). *Id.* at 61.

Under *Wallis*, officials may remove a child from the custody of its parent without prior judicial authorization only if the information they possess at the time of the seizure provides reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury. *Wallis ex rel. Wallis v. Spencer*, 202 F.3d 1126, 1138 (9th Cir. 1999).

Given the factual allegations set forth by McDaniel in the Complaint, the Court finds that as for this Count I, the Unlawful Seizure of a Child, the low threshold has been satisfied for this claim to proceed.

**2. False Arrest**

Second, McDaniel claims that Defendants caused her to be arrested and detained without probable cause or lawful justification because the arrest and subsequent trial were based solely on lawfully prescribed medications and occurred despite her full cooperation. Dkt. 2, at 60. A public record search indicated McDaniel was initially charged with two felony counts of possession of a controlled substance and one count misdemeanor driving under the influence. The two felony possession charges were removed by an amended charging document, and the DUI proceeded to trial where McDaniel was acquitted.

A warrantless arrest violates the Fourth Amendment when it is made without

probable cause. *Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir. 2017). Probable cause exists when the facts and reasonably trustworthy information known to the officers at the time of arrest would lead a reasonably prudent person to believe there was a fair probability that the arrestee committed a crime. *Id.* Even when an officer arrests without probable cause, the officer may receive qualified immunity if probable cause was reasonably arguable. *Id.*

The filing of a criminal Complaint immunizes investigating officers from damages because it is presumed that the prosecutor filing the Complaint exercised independent judgment in determining that probable cause for an accused's arrest exists at that time. *Harper v. City of L.A.*, 533 F.3d 1010, 1015 (9th Cir. 2008).

Following her arrest, McDaniel was charged with possession of a controlled substance and DUI; however, the possession charges were ultimately dropped by the prosecutor's office. McDaniel makes no allegations that a reasonably prudent person could not believe that there was a fair probability that she had committed the crime of possession or driving under the influence, even if the claims were dropped or she was later acquitted. As set forth above, even if the probable cause that served the basis for arrest was arguably unreasonable, the Defendants would likely still be immune to liability because the prosecutor initially decided to charge McDaniel with both possession and DUI. Thus, Count II does not satisfy legal standard set forth to continue.

**3. Due Process**

Third, McDaniel alleges Defendant's deprived her of liberty interests in family integrity, custody, and foster/guardian status without notice or meaningful opportunity to

be heard. Dkt. 2 at 62. Further, she alleges Defendants excluded her from proceedings, prevented the presentation of evidence, and interfered with access to court records and proceedings. *Id.* McDaniel alleges that these actions committed by Defendants were arbitrary, fundamentally unfair, and violated clearly established procedural due process protections. *Id.* at 62.

A procedural-due-process claim requires a claimant to first establish deprivation of a constitutionally protected liberty or property interest and then show that the deprivation was not accompanied by sufficient procedural protections. *Johnson v. Ryan*, 55 F.4th 1167 (9th Cir. 2022). Sufficiency turns on the private interest affected, the risk of erroneous deprivation and probable value of additional or substitute safeguards, and the government's interest. *Id.*

Given the factual allegations set forth by McDaniel in the Complaint, the Court finds that as for Count III, the low threshold has been satisfied for this claim to proceed.

**4. Familial Association**

Fourth, McDaniel alleges that the right to familial association is a fundamental liberty interest protected by the Fourteenth Amendment and that the Defendants interfered with her constitutionally protected relationships with her grandchild and other family members. Dkt. at 63. McDaniel further alleges the Defendants also unlawfully interfered with the sibling relationship between minor children, citing that the Constitution protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children. *Id.* at 63.

The Ninth Circuit has consistently held that "Parents and children have a well-elaborated constitutional right to live together without governmental interference." *Wallis ex rel. Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 1999) (citing *Santosky v. Kramer*, 455 U.S. 745, 753, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982); *Stanley v. Illinois*, 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (1972)).

In her Compliant, McDaniel alleges the child lived with her for an extended period of time, and she had legal custody, guardianship, or another legally cognizable caregiving status. The Complaint also explains how the conduct disrupted the family unit and has changed since the alleged conduct.

Given the factual allegations set forth by McDaniel in the Complaint, the Court finds that as for Count IV, the low threshold has been satisfied for this claim to proceed.

**5. Misrepresentation/Fabrication of Evidence**

Fifth, McDaniel alleges Defendants knowingly presented false, misleading, incomplete, and materially inaccurate information to courts and relied on information they knew to be inaccurate or recklessly disregarded the truth. Dkt. 2, at 66. McDaniel then alleges Defendants continued to rely on this inaccurate information, even after being provided with corrected documentation, and the conduct was deliberate and undertaken to influence judicial decision-making in proceedings affecting custody, placement, and McDaniel's rights. *Id.* McDaniel alleges this conduct violates due process and principles set forth in *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001).

In *Deveraux*, the court states that a fabrication of evidence claim requires a showing that "1) Defendants continued their investigation of Devereaux despite the fact that they

knew or should have known that he was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

While the legal standard is lower at this stage, McDaniel has not pleaded facts sufficient to show a plausible claim for relief. Thus, the Court finds the allegations do not put Defendants on notice and the threshold to continue has not been satisfied for Count V to proceed.

**6. Retaliation**

Sixth, McDaniel claims that Defendants took adverse actions against her in response to her asserting her constitutional rights, providing documentation, and challenging the conduct of CPS. Dkt. 2, at 67. These actions are alleged to have included separation interference with licensing, exclusion from proceedings, and restriction of McDaniel's ability to participate in matters affecting her family. *Id.* Defendants are alleged to have further restricted and interfered with McDaniel's access to court records and information necessary to participate in proceedings. McDaniel concludes that this constitutes unlawful retaliation in violation of the First and Fourteenth Amendment rights. *Id.*

The Court finds no alleged facts in the Complaint to support a cause of action upon which relief can be granted. Thus, the Court finds the allegations do not put Defendants on notice and the threshold to continue has not been satisfied for Count VI to proceed.

**7. Excessive Force**

Seventh, McDaniel alleges Defendants used unreasonable and excessive force

against her by physically removing McDaniel by her hair and subjecting her to involuntary detention. Dkt. 2, at 68. McDaniel alleges she posed no threat to the officers or others that would justify such force, and such actions violated her Fourth Amendment rights. *Id.*

Excessive force claims are based on the Fourth Amendment right to be free from unreasonable search and seizures and is implicated where an officer exceeds the bounds of reasonable force. *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1116 (9th Cir. 2017). These claims are judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396, (1989).

The Court finds no facts alleged in the Complaint to support a cause of action upon which relief can be granted for a claim of excessive force. There is no specific injury alleged in the Complaint, only the conduct of being removed from her hair and detained. Furthermore, McDaniel has failed to demonstrate objective unreasonableness from the perspective of officers confronting the situation, rather than merely alleging improper intent or relying on hindsight. Thus, the Court finds the allegations do not put Defendants on notice and the threshold to continue has not been satisfied for Count VII to proceed.

**8. *Monell* Liability**

Count VIII in McDaniel's Complaint alleges Defendants City of Garden City, City of Boise, and associated entities maintained policies, practices, or customs which led to the constitutional violations as described in Counts I-VI. Dkt. 2, at 69. She alleges these violations included failure to train, supervise, and discipline officers and CPS personnel; and were not isolated incidents but the result of "systemic failures and deliberate indifference to constitutional rights." *Id.*

Plaintiff has failed to put Defendants on notice. As stated herein, the bar is higher than simply stating the language or prima facie elements required to bring a claim. The allegations contain no specific facts describing how the Defendants failed to train, supervise, or discipline; they merely assert that the Defendants failed to fulfill these duties. Such conclusory allegations are insufficient to satisfy the applicable legal pleading standards necessary for Count VIII to proceed beyond this stage.

**9. Fraud on the Court**

Finally, McDaniel alleges, in Count IX, Defendants engaged in a pattern of presenting false information, omitting material facts, and misleading the court across multiple proceedings. Dkt. 2, at 69. McDaniel claims that she notified the court and nothing occurred, which, according to the McDaniel, interfered with the judicial decision-making process, undermining the integrity of the process, and substantially prejudicing her. *Id.* at 70.

The Court finds no facts alleged in the Complaint to support a cause of action upon which relief can be sought by McDaniel for these claims. Thus, the Court finds the allegations do not put Defendants on notice and the threshold to continue has not been satisfied for Count IX to proceed.

## IV. CONCLUSION

McDaniel's application to proceed in forma pauperis does not establish her indigency; however, the Court will allow McDaniel to pay the filing fee over time. McDaniel must pay $100 a month towards the filing fee.

While the Court is not making any determinations as to the ultimate likelihood of

success on any of McDaniel's causes of action, the Court nonetheless finds Counts I, II, and IV of the Complaint overcome the low threshold at this early stage to survive initial review. The remaining Counts are dismissed without prejudice. McDaniel may amend her Complaint and refile if she so chooses or proceed on the surviving claims.

## V. ORDER

1. McDaniel's Application for Leave to Proceed in Forma Pauperis (Dkt. 1) is DENIED. McDaniel need not prepay the fee in full at this time; however, she must pay $100.00 per month to the Clerk of Court, on or before the last day of each month, until the filing fee is paid in full. Failure, at any time, to comply with this payment schedule may result in dismissal of this case without further notice. The first payment is due on or before November 30, 2026.

2. McDaniel's Complaint (Dkt. 2) is DISMISSED WITHOUT PREJUDICE as to Counts III, V–IX. She may proceed with her remaining claims. The Court grants McDaniel leave to file an Amended Complaint in compliance with the Court's analysis above if she wishes to proceed with the deficient claims. McDaniel must file her Amended Complaint within **30 days** of the issuance of this Order.

3. Failure to submit an Amended Complaint or proceed with the claims currently allowed by this Court within the ordered timeframe will result in the full dismissal of Counts III, V, VI, VII, VIII, and IX WITH PREJUDICE and without further notice.

4. Because the Court has granted leave to proceed in forma pauperis, the Court will issue notice and summons to defendants for the surviving Counts after the passage of **30 days**, or, if McDaniel amends her Complaint, to all those defendants involved in cognizable claims in the Amended Complaint after renewed analysis.

DATED: October 26, 2026

David C. Nye
U.S. District Court Judge